UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| TOMMY LAMPLEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CAUSE NO.: 2:10-CV-338-TLS |
| | ) |
| ED BUSS, Commissioner, Indiana | ) |
| Department of Correction, *et al.*, | ) |
| | ) |
| Defendants. | ) |

**OPINION AND ORDER**

This matter is before the Court on a Motion for Summary Judgment [ECF No. 79] filed by the Defendants pursuant to Federal Rule of Civil Procedure 56. In support of their Motion, the Defendants submitted a Memorandum in Support [ECF No. 80] and their own declarations and documentation relating to temperatures in the Westville Control Unit while the Plaintiff was housed there. The Defendants gave Notice [ECF No. 82] to the *pro se* Plaintiff pursuant to *Kincaid v. Vail*, 969 F.2d 594, 599 (7th Cir. 1992), *Timms v. Frank*, 953 F.2d 281, 285–86 (7th Cir. 1992), and *Lewis v. Faulkner*, 689 F.2d 100 (7th Cir. 1982), informing the Plaintiff how to respond to their Motion for Summary Judgment. But as of the date of this Opinion and Order, the Plaintiff has not responded or otherwise opposed the Defendant's Motion. Indeed, the Plaintiff stated in his June 27, 2012, Notice to the Court that he "wish[ed] to withdraw this action and not pursue it any further." (Notice of Withdrawal of Compl., ECF No. 85.) The Court denied that request, affording the Plaintiff until August 16, 2012, to either file a response to the Motion for Summary Judgment or to file a motion to dismiss this action with prejudice. (Order, ECF No. 86.) As of the date of this Opinion and Order, the Plaintiff has done neither.

**BACKGROUND**

The Plaintiff, Tommy Lampley, a prisoner currently confined at Indiana State Prison, filed this *pro se* action pursuant to 42 U.S.C. § 1983 alleging that Indiana Department of Correction (IDOC) officials violated his federally protected rights while he was confined at the Westville Correctional Facility (WCF). The Plaintiff alleges that the Defendants withheld two books from him on the grounds that they threatened the safety and security of the facility and that they placed him in a cold cell without adequate blankets or clothing. The Court screened the Complaint pursuant to 28 U.S.C. § 1915A, and granted the Plaintiff leave to proceed against Defendants Debra Daugherty, Mark Levenhagen, Jason Parker, Gerald Buckmon, Roy Zimmermon, and George Payne on his First Amendment claim dealing with denial of publications, and on his Eighth Amendment claim dealing with conditions he says he suffered while confined in a segregation unit. (*See* Opinion & Order 11–12, ECF No. 13.)

**SUMMARY JUDGMENT STANDARD**

The Federal Rules of Civil Procedure provide that motions for summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists when "'there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" *AA Sales & Assocs. v. Coni-Seal, Inc.*, 550 F.3d 605, 608–09 (7th Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). Under Rule 56(c), a party "asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record, . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot

produce admissible evidence to support the fact." If appropriate, summary judgment should be entered against a party who fails to respond. Fed. R. Civ. P. 56(e)(2); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (holding that a court should enter summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial"). A court's role on summary judgment is not to weigh the evidence, make credibility determinations, or decide which inferences to draw from the facts, but instead to determine whether there is a genuine issue of triable fact. *Anderson*, 477 U.S. at 255; *Washington v. Haupert*, 481 F.3d 543, 550 (7th Cir. 2007); *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003).

Thus, a court in ruling on a summary judgment motion construes all facts in the light most favorable to the nonmoving party and draws all reasonable inferences in that party's favor. *AA Sales & Assocs.*, 550 F.3d at 609. Under Local Rule 56-1(b), a party opposing summary judgment must identify the material facts that the party contends are genuinely disputed in a section labeled "Statement of Genuine Disputes."

**DISCUSSION**

The Plaintiff brings this action under 42 U.S.C. § 1983, which provides a cause of action to redress the violation of federally secured rights by a person acting under color of state law. To state a claim under § 1983, a plaintiff must allege violation of rights secured by the Constitution and laws of the United States, and must show that a person acting under color of state law committed the alleged deprivation. *West v. Atkins*, 487 U.S. 42, 48 (1988).

**A.     The Plaintiff's First Amendment Claim**

The Plaintiff alleges that on May 21, 2010, Defendant Daugherty sent him a Notice and Report of Action Taken on Correspondence, stating that the facility was withholding two publications, *The Art of Seduction* and *The Art of Making Money*, from him "because they are a 'threat to safety and security' at Westville Correctional Facility." (Compl. 1, ECF No. 1.)

As a prisoner, the Plaintiff "retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). The First Amendment guarantees the right to be free from certain interference with correspondence. *Turner v. Safley*, 482 U.S. 78, 89–91 (1987). Regulations governing receipt of publications by prisoners are analyzed under the reasonableness standard, and prison regulations are valid if they are reasonably related to legitimate penological interests, such as security. *Thornburgh v. Abbott*, 490 U.S. 401, 40 (1989).

> [S]everal factors are relevant in determining the reasonableness of the regulation at issue. First, there must be a 'valid, rational connection' between the prison regulation and the legitimate governmental interest put forward to justify it. Thus, a regulation cannot be sustained where the logical connection between the regulation and the asserted goal is so remote as to render the policy arbitrary or irrational. . . .
> A second factor relevant in determining the reasonableness of a prison restriction . . . is whether there are alternative means of exercising the right that remain open to prison inmates. Where other avenues remain available for the exercise of the asserted right, courts should be particularly conscious of the 'measure of judicial deference owed to the corrections officials in gauging the validity of the regulation.
> A third consideration is the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally. . . . When accommodation of an asserted right will have a significant ripple effect on fellow inmates or on prison staff, courts should be particularly deferential to the informed discretion of corrections officials.
> Finally, the absence of ready alternatives is evidence of the reasonableness of a prison regulation. By the same token, the existence of obvious, easy alternatives may be

>evidence that the regulation is not reasonable, but is an exaggerated response to prison concerns. . . . [I]f an inmate claimant can point to an alternative that fully accommodates the prisoner's rights at *de minimus* cost to valid penological interests, a court may consider that as evidence that the regulation does not satisfy the reasonable relationship standard.

*Turner*, 482 U.S. at 89–91 (quotation marks, citations, and ellipsis omitted).

The Defendants' submissions establish that Defendant Daugherty is a Mail Clerk at the WCF and that part of her job is to examine incoming mail to determine whether the contents must be prohibited from entering the facility (Daugherty Decl. ¶¶ 2 & 6, ECF No. 81-1.) Pursuant to IDOC Policy # 02-01-103, any printed matter which threatens the security of the facility must be excluded. (*Id.* ¶¶ 4 & 7.) Publications that encourage or instruct the commission of criminal activity are considered threats to security. (*Id.* ¶ 8.)

*The Art of Making Money* "instructs readers on how to counterfeit United States Currency." (*Id.* ¶ 9.) *The Art of Seduction* is "instructive on how to 'victimize' others and manipulate them against [their] will." (*Id.* ¶ 10.) The Defendants concluded that these works were not "appropriate for a correctional environment where the Department is attempting to reform convicted felons." (*Id.* ¶ 11.)

Because the Defendants met their initial obligation under Rule 56, the burden shifts to the Plaintiff to come forth with evidence sufficient to allow a factfinder to decide in his favor the question of whether the Defendants improperly withheld these publications from him. Although the Defendants provided the Plaintiff with an extensive warning of the consequences of not submitting an affidavit stating facts opposing their dispositive motion, he has not responded to their motion. Because the Plaintiff has not responded to the Defendants' summary judgment motion, the Court accepts the Defendants' uncontested sworn statements of fact as true.

The evidence before the Court establishes that *The Art of Making Money* instructs readers

how to commit the crime of counterfeiting U.S. currency, while *The Art of Seduction* instructs readers how to victimize others and manipulate them against their will. Accordingly, there is a valid and rational connection between the regulation under which these publications were barred from entering the WCF and the governmental interest the Defendants used to justify the decision to bar these publications. The IDOC has a strong interest in keeping potentially dangerous or counter-reformative materials out of the hands of prisoners, and both of these books counter the IDOC's goal of rehabilitation of convicted felons. Accordingly, the Defendants are entitled to summary judgment on the Plaintiff's First Amendment claim.

### B.     The Plaintiff's Eighth Amendment Claim

The Plaintiff alleges that the Defendants violated rights protected by the Constitution's Eighth Amendment by depriving him of adequate clothing and placing him in a cell where:

> the ventilation system air condition was blowing out cold air all day and at night the tempatures dropped with cold air blowing through vents was brutal, and he had no adequate clothing to combat the cold. Plaintiff had only one cotten blanket with holes, one sheet, one pair of pants, one shirt, no long john underwear, no cap, no clothes that were clean, no gloves, no extra blankets, no clean socks, no clean boxers, and no coat to combat the cold. The cell windows in the back of the Plaintiff's room was blowing cold air in at night because the insolation filler around the windows frame has been removed, so this is broken, and the night time temperatures in the cell with air condition on, and cold air coming in through [the] back window were freezing.

(Compl. 10 (quotation marks omitted).)

"Prison conditions may be harsh and uncomfortable without violating the Eighth Amendment's prohibition against cruel and unusual punishment." *Dixon v. Godinez*, 114 F.3d 640, 642 (7th Cir. 1997) (citing *Farmer v. Brennan*, 511 U.S. 825, 833–34 (1997)). "Prisoners are, however, entitled to 'the minimal civilized measure of life's necessities,' including adequate shelter. For this reason, prisoners have a right to protection from extreme cold."

*Dixon*, 114 F.3d at 644 (citation omitted). The United States Supreme Court has noted that:

> *Some* conditions of confinement may establish an Eighth Amendment violation "in combination" when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise-for example, a low cell temperature at night combined with a failure to issue blankets.

*Wilson v. Seiter*, 501 U.S. 294, 304 (1991).

The Defendants' submissions establish that Defendants Buckman, Zimmerman, and Parker are correctional officers assigned the WCF's Westville Control Unit (WCU) (Buckman Decl. ¶ 2, ECF No. 81-4; Zimmerman Decl. ¶ 2, ECF No. 81-5; Parker Decl. ¶ 2, ECF No. 81-6.) The WCU has four climate controlled housing pods, heated in winter and air conditioned in summer (Payne Decl. ¶ 10, ECF No. 81-3.) The WCU maintained daily temperature and humidity logs during the period that the Plaintiff was confined there (*id.* ¶ 11), and the Defendants attached these records to their Motion for Summary Judgment (*see id.*). According to these records, the lowest temperature recorded during that period was 64.6 degrees Fahrenheit, the highest temperature was 76.1 degrees Fahrenheit, and the average temperature was about 70 degrees Fahrenheit. (Mem. in Supp. of Defs.' Mot. for Summ. J. 12, ECF No. 80.)

Defendants Buckman, Zimmerman, and Parker state that they are, at times, responsible for distributing and collecting offender clothing and bedding. (Buckman Decl. ¶ 5; Zimmerman Decl. ¶ 5; Parker Decl. ¶ 5.) These Defendants deny that they subjected the Plaintiff to inhumane temperatures, and they state in their declarations that they had no intent to leave the Plaintiff without adequate clothing or bedding at any time, nor did they believe that the Plaintiff thought he had inadequate clothing or bedding. (Buckman Decl. ¶¶ 6–9; Zimmerman Decl. ¶¶ 6–9; Parker Decl. ¶¶ 6–9.) Defendants Levenhagen and Payne were supervisors who were not personally responsible for distributing clothing and bedding to offenders (Levenhagen Decl. ¶

10, ECF No. 81-2; Payne Decl. ¶ 12.) Defendants Levenhagen and Payne state that they had no knowledge that the Plaintiff believed he did not have adequate clothing or bedding, nor did they direct the correctional officers to leave the Plaintiff with an inadequate amount of clothing or bedding. (Levenhagen Decl. ¶¶ 11–13; Payne Decl. ¶¶ 13–15.) Because the Plaintiff has not responded to the Defendants' Motion for Summary Judgment, the Court accepts their uncontested sworn statements of fact as true.

The Defendants' submissions rebut the Complaint's allegations that the Plaintiff was subjected to conditions of confinement that constituted cruel and unusual punishment. The Plaintiff alleges that he was subjected to uncomfortably low temperatures over a long period of time, but the documentation concerning temperatures on the unit in which the Plaintiff was housed establishes that temperatures ranged from a low of 64.6 degrees Fahrenheit, to as high as 76.1 degrees Fahrenheit, with an average temperature of about 70 degrees Fahrenheit. Accordingly, the Plaintiff was not subjected to excessively cold temperatures. Nor is there evidence in the record from which a reasonable factfinder could conclude that the Defendants deprived the Plaintiff of adequate clothing or bedding. Accordingly, the Defendants are entitled to summary judgment on the Plaintiff's Eighth Amendment claim.

## CONCLUSION.

For the foregoing reasons, the Court GRANTS the Defendants' Motion for Summary Judgment [ECF No. 79], and DIRECTS the Clerk to enter judgment in favor of the Defendants and against the Plaintiff.

SO ORDERED on September 5, 2012.

                                         s/ Theresa L. Springmann
                                        THERESA L. SPRINGMANN
                                        UNITED STATES DISTRICT COURT
                                        FORT WAYNE DIVISION